AMERICAN SALESBOOK CO. et al. v. CARTER–CRUME CO., Limited, et al.

(Circuit Court, W. D. New York. April 30, 1906.)

No. 207.

PATENTS—INVENTION—MANIFOLDING SALESBOOKS.

The Beck patent, No. 647,934, for a manifolding salesbook and holder, the purpose of the improvement being to facilitate the manipulating of the leaves without soiling the fingers with the carbon sheet, was not anticipated, and in view of the success of the device shown must be conceded invention. Also *held* infringed.

In Equity. On final hearing.

M. B. Philipp and H. H. Rockwell, for complainants.
Warfield & Duell, for defendants.

HAZEL, District Judge. This suit in equity is brought for the infringement of the second and third claims of letters patent No. 647,934, issued April 24, 1900, to Warren F. Beck for "manifolding salesbook and holder." The defenses are want of patent ability, prior use, and anticipation. A phase of this controversy was heretofore considered by this court (125 Fed. 499) on demurrer to the bill, and the patent held invalid for want of invention and novelty, on the ground that the variation from the prior art was of a trifling character, not calling for the exercise of the inventive faculty and was perfectly obvious to those engaged in the manufacture of such devices. A decree was allowed dismissing the bill, and on appeal the Circuit Court of Appeals, without opinion, reversed such decree and required the defendants to answer. The cause is now submitted on final hearing. It may be fairly presumed that the appellate tribunal was of opinion, not

only that the grant of the letters patent required evidential facts to negative the assertion of want of novelty, but also that the claims on their face were not palpably lacking in patentability. Upon the former hearing it was thought that complainants' claim to invention rested solely in the cutaway portion of the carbon sheet, which exposed the underlying sales sheet and enabled manipulation of the leaves without soiling the fingers by contact with the carbon. The patent, however, is for a combination with a manifold pad of a transfer sheet overlying the leaves thereof and having a space clipped therefrom; the transfer-sheet folded over the loose ends of the assembled leaves of the pad and concealing such free ends, except where exposed by the clipped-out portion of the carbon. Thus access to such loose ends is prevented, except at the cutaway portion of the carbon, which cutaway part enables taking hold of the free ends to withdraw the leaves without manipulating or touching the carbon. Complainants claim that, by this arrangement of placing the thumb spacing at or near the free ends of the leaves of the manifold pad, exposing a portion thereof, the remainder of such free ends being otherwise concealed by the carbon sheet, a novel and patentable result was attained. Hence it appears that the claims involve something more than the mere cut-out portion of the carbon at the free ends of the leaves for the purpose of facilitating their removal from the pad without soiling the fingers. The utility of the structure is not denied.

According to the patentee the prior art contained many imperfections which retarded the convenient use of the manifolding salesbook. Manipulation of the carbon by inserting the same between the original and duplicate leaves with danger of soiling the fingers, the inability to utilize the entire leaves of the pad because the carbon did not completely cover the same, the liability of tearing the carbon sheet in withdrawing the original and duplicate leaves, the necessity of textile fabrics for the carbon and of specially made holders to clamp the carbon sheet, are some of the defects cited by complainants to substantiate their claim for novelty and utility in the Beck device. Stress is placed upon the requirements of the trade that the carbon sheet must completely rest upon or overly the leaves of the pad, otherwise a complete transfer of the writing on the original sheet would be impossible. Is complainants' assertion substantiated by the evidence? Was an advance made by the patentee in a field of invention circumscribed and extensively delved into by others? The specification, in recognition of the state of the art, says:

"My invention relates to improvements in the pads used by merchants and others in taking manifold copies of orders, etc., and to the holders for such pads; the objects of my improvements being: First, to provide a simple and cheap form of holder wherein a pad and a carbon or transfer sheet may be placed and replaced independent of one another; and, second, to provide means for manipulating the leaves of the pad without touching the transfer sheet with the fingers."

Claims 2 and 3 read as follows:

"(2) The combination, with a manifold-pad, of a holder or cover therefor having a carbon or transfer-sheet secured thereto, said transfer-sheet being folded over upon the leaves of the pad at their free ends and having a portion

cut away to expose a portion of the leaves at or near their free ends for the purpose set forth.

"(3) The combination, with a manifold pad, of a carbon or transfer sheet normally resting upon the top of the pad and overlying the leaves thereof, said transfer-sheet having a portion cut away to expose a portion of said leaves at or near their free ends for the purpose set forth, the leaves at their free ends being otherwise concealed by the transfer-sheet."

The second claim describes three elements, viz.: A manifold pad, a holder therefor, a carbonized sheet folded over upon the leaves of the pad at their free ends; such carbon sheet having a portion cut away to expose said free ends of the leaves. Claim 3 has two elements, a pad and a carbon sheet overlying the leaves and having a portion cut out to expose the leaves at or near their free ends; the leaves at their free ends being otherwise concealed by the transfer sheet. The general arrangement of the pad in question prevents taking hold of the leaves except where the carbon is cut out, and hence the underlying leaf is removable without touching the carbon sheet. That the cutaway portion must always be located at or near the free ends of the leaves, the free ends being otherwise concealed by the transfer sheet, would seem to be of the essence of the claims. Several forms of manifold pads for duplicate and triplicate copies are mentioned in the specification, and the inventor does not confine himself to the specified manner of fastening the transfer sheet in the holder. He expressly states that the carbon sheet may be attached to the holder by means of bails snapping over bosses, or when used without a holder may be pasted on the back of the pad. In brief, a broad claim is made for a manifolding pad combined with a transfer sheet having a portion cut away at or near the free ends of the leaves; the free ends of the leaves being otherwise concealed by the carbon sheet, and the object of the construction, as stated, being to enable removing the leaves without lifting the transfer sheet. In this situation the question is whether the prior art disclosed this device?

Defendants contend that the patent in suit is completely anticipated by the patent to Oldfield, No. 517,359, owned by defendants. This patent undoubtedly closely approaches the Beck invention. The Oldfield manifolding books in evidence are so-called side carbon books with a margin at the top side of the carbon sheet and a cutaway portion in the same at the lower right-hand corner. The specification points out that the carbon may be placed between the original and duplicate leaves by handling the upper broad uncarbonized margin thereof without danger of smutting the fingers. The functional object of the cutaway portion of the carbon sheet is not specially referred to in the specification, although the drawing attached to the patent shows such spacing at the lower right-hand corner. The transfer sheet in this patent is attached to the side and does not fall over the free ends, nor is the cutaway portion in the carbon sheet at or near the free ends, nor the manner of manipulation of the carbon and leaves like that of complainants' device. The free ends of the leaves are at the top of the pad, and, if the cutaway portion in the carbon sheet were at that end, it is thought the same result would follow as described in claim 3 of the patent in suit. The general arrangement of

the Oldfield pad warrants the inference that the principle use of the spacing was to remove the duplicate sheet without detaching the carbon, in the event the same had not been torn out with the original.

The next point relates to the prior public use of the embodiment of the patent in suit. The Mooney book manufactured by the defendant in 1895, has a cover with a carbon holder which consists of a wire extending from the upper to the lower end of the cover. To this wire is attached a clamp extending across the cover, but being shorter in width by half an inch. The carbon sheet which covers the leaves is firmly held over their free ends by the clamp. There is a notch or space cut out from the lower right corner of the carbonized sheet which defendants contend performs the functions of the patent in suit. Other Mooney books in evidence show the carbon sheet attached to the clamp which extends the entire breadth of the pad and without the notch at the lower right-hand corner. Complainants argue that the notch in the Mooney book was the result of a faulty construction occasioned by defendant's inability to supply a clamping device of sufficient width to hold the carbon sheet of the dimensions desired by Mr. Mooney; that the dimensions of the pad ordered by him were greater than the standard width, and to supply his order the defendants used a holder of standard width which for convenience necessitated cutting out a portion of the carbon. In short such construction was accidental and never designed for the function of complainants' device. This point is thought to have force, in view of the fact that defendants did not set up the pad in question in the original or first amended answer, and apparently the same came under their observation during the progress of the hearing. However, it is thought the Mooney structure does not disclose the elements of the claims in suit and was not intended to be operated in the manner of the Beck patent. Defendants gave evidence to show that the Mooney pad was commonly used in precisely the same way as the Beck invention; the notch being used for thumb spacing. My impression, however, is that the original method involved raising the clamping device to which the carbon sheet was attached to withdraw the original leaf lying thereunder and not the use of the clipped-out portion for that purpose. Moreover, the carbon sheet of the Mooney pad was not combined with the pad as to fold over and conceal the loose ends as specified in claim 3.

The Mandel triplicate book, manufactured by defendants in 1895, has two carbon sheets, the second of which is notched at the upper right-hand corner to facilitate handling the first without soiling the fingers. The carbons are placed in the center of the book; the leaves being numbered on either side thereof. This exhibit manifestly does not disclose claims 2 and 3. The character of the evidence in relation to the Binner book does not warrant its consideration to invalidate the patent in suit. Considerable testimony was given to show that in 1896 and 1897 the Binner company was engaged in manufacturing a salesbook which had a corner of the carbon slipped out to expose the underlying leaves and facilitate handling thereof. But the testimony in this regard is not strictly harmonious, and, in the face of complainants' contrary showing, a reasonable doubt arises as to its accu-

racy. An examination of the prior art, as shown in the patents to Frink, the Carter reissue, Randall, Kinnard, and Oldfield, would seem to indicate that invention was required to improve the manifolding arrangement described in such patents, specially in relation to the manner of manipulating the leaves to escape contact of the fingers with the carbon. For example: In the Carter reissue patent a tape was threaded through the carbon sheet, in the Randall patent a hardened tape or edge was attached to the carbon, and in other prior patents resort was had to various expedients to overcome the difficulty mentioned.

Beck abandoned the old side carbon which by handling easily became torn or worn, and by his adaptation, among other things, a carbon sheet in a manifolding salesbook may conveniently be used without smirching the fingers, and, if such carbon sheet is coated on both sides for making triplicate copies, the handling thereof according to his method is likewise without soiling. The specification indicating the scope of the claims says:

"In fact, my invention in this respect comprises any form and arrangement of pad and transfer-sheet wherein the transfer-sheet if left intact as it lies upon the pad would conceal the free or loose ends of the leaves of the pad, thereby rendering it necessary to lift the sheet in order to withdraw the leaves from beneath it in manipulating the pad, the cutting away of a portion of the transfer sheet so as to expose a portion of the leaves at or near their free ends, enabling this withdrawal to be accomplished without lifting or otherwise handling the transfer-sheet."

True, the improvement of Beck was not remarkable or a great advance in the art. Oldfield had but little to do to conform his structure precisely to that of Beck, yet the record satisfactorily shows that the simple change or alteration made by the patentee has annually resulted in increased pecuniary value, and that the defendant company, which for years has been engaged in supplying the trade with manifolding pads, has adopted the improvement. In the main, the patents of the prior art seem to have had one central motive, the solution of the same simple problem—an adjustment of the elements of a manifolding book which would enable speedy and convenient manipulation of the leaves without smutting the fingers by handling the carbon sheet. This the patentee has accomplished, and, in view of the manifest results of his improvement, I conclude that the patent is not devoid of patentable invention.

Infringement of claims 2 and 3 not being disputed, a decree may be entered for the complainants for an injunction and accounting, with costs.